Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI LLP**
Proposed Counsel to the Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000
dpick@picklaw.net

Hearing Date: September 15, 2010
Time: 9:30 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

EASTERN FARMS, INC.,
d/b/a DELMONICO GOURMET FOOD
MARKET,

Chapter 11
Case No. 10-14150(AJG)

Debtor.
------------------------------------------------------------x

## NOTICE OF MOTION FOR ENTRY OF AN ORDER, PURSUANT TO §364(C) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001(C), AUTHORIZING THE DEBTOR TO CONTINUE PAYMENTS UNDER INSURANCE PREMIUM FINANCING AGREEMENT

**PLEASE TAKE NOTICE** that, upon the annexed application, dated August 23, 2010 and the exhibits annexed thereto (the "Motion"), Eastern Farms Inc. d/b/a Delmonico Gourmet Food Market, the debtor and debtor-in-possession herein (the "Debtor"), by and through its undersigned counsel, will move this court before the Honorable Arthur J. Gonzalez, Chief United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10017, on the 15th day of September, 2010 at 9:30 a.m., or as soon thereafter as counsel may be heard, for the entry of an Order, pursuant to §364(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to continue payments to Standard Funding Corp. under a certain Premium Finance Agreement executed prior

to the Debtor's bankruptcy filing, and granting such other and further relief as this Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall (i) be made in writing, (ii) conform to the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the Southern District of New York, (iii) set forth the name of the objecting party, the nature and amount of any claim or interest held or asserted against the Debtor's estate or property, the basis for the objection and the specific grounds therefor, (iv) be filed with the Court with a copy to the chambers of Honorable Arthur J. Gonzalez, together with proof of service thereof, and (v) be served in a manner so as to be received by Pick & Zabicki LLP, 369 Lexington Avenue, 12th Floor, New York, New York 10017, not later than seven (7) days prior to the hearing date.

Dated: New York, New York
       August 23, 2010

                         **PICK & ZABICKI LLP**
                         Proposed Counsel to the Debtor

                         By: _____
                               Douglas J. Pick
                         369 Lexington Avenue, 12th Floor
                         New York, New York 10017
                         (212) 695-6000

Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI LLP**
Proposed Counsel to the Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000
dpick@picklaw.net

Hearing Date: September 15, 2010
Time: 9:30 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

EASTERN FARMS, INC.,
d/b/a DELMONICO GOURMET FOOD
MARKET,

                      Debtor.
----------------------------------------------------------------x

Chapter 11
Case No. 10-14150(AJG)

## APPLICATION IN SUPPORT OF ENTRY OF AN ORDER, PURSUANT TO §364(C) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001(C), AUTHORIZING THE DEBTOR TO CONTINUE PAYMENTS UNDER INSURANCE PREMIUM FINANCING AGREEMENT

TO THE HONORABLE ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE:

       Eastern Farms Inc. d/b/a Delmonico Gourmet Food Market, the debtor and debtor-in-possession herein (the "Debtor"), by and through its undersigned counsel, submits this application ("Application") in support of the entry of an Order, pursuant to §364(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to continue payments to Standard Funding Corp. ("SFC") under a certain Premium Finance Agreement (the "Agreement", a copy of which is attached hereto as *Exhibit "A"*) executed prior to the Debtor's bankruptcy filing, and respectfully represents and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. §157(b) and venue is proper before this Court pursuant to 28 U.S.C. §1409. The statutory predicates for the relief sought herein are §346(c) of the Bankruptcy Code and Bankruptcy Rule 4001(c).

## INTRODUCTION

2. The Debtor is engaged in the operation of a delicatessen and restaurant business as "Delmonico Gourmet Food Market". The Debtor's operations are located at 55 East 59th Street, New York, New York 10022..

3. On July 30, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court and an Order for Relief was simultaneously entered. The Debtor continues to manage its property and operate its business as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No pre or post-Petition Date committee of creditors was or has been appointed.

4. In May, 2010, the Debtor was issued a renewal general liability insurance policy (the "Insurance Policy") by LIG Insurance Company. The Insurance Policy must be maintained by the Debtor so as to keep the Debtor's business operations and the assets of the estate insured for the benefit of the Debtor and its creditors, in order for the Debtor to be in compliance with certain provisions of its non-residential real property lease and its responsibilities as a debtor-in-possession. Accordingly, the maintenance of the Policy is necessary to the Debtor's efforts as a chapter 11 debtor.

5. The total amount payable by the Debtor in order to maintain the Policy is $13,448.29 inclusive of certain minimal taxes and fees. The Debtor immediately made an initial down payment of $4,000.00 against the total Policy amounts. Unfortunately, the Debtor did not have the immediate financial wherewithal to pay those amounts owed in full and, thus, the Debtor sought to obtain financing as it had regularly done in the past.

6. At the recommendation of the Debtor's insurance broker, SFC provided the Debtor with the Agreement concerning the financing of the amounts owed in connection with the Policy. The Agreement, which was executed on or about May 27, 2010, provides for an amount financed by SFC totaling $9,448.28. The amounts financed by SFC is required to be paid by the Debtor in nine (9) monthly installment payments of $1,067.86 each which includes a finance charge of $564.96 in favor of SFC (14.75% per annum on amounts financed). The Debtor has already made the monthly installment payments due for the months of June, July and August, 2010.

7. The Debtor believes that the finance charge provided for under the Agreement is reasonable and is in line with what other insurance premium financiers offer. Because of the relatively minimal finance charge proposed by SFC, the Debtor does not believe that soliciting competing proposals would result in any meaningful savings to the Debtor. Upon consultation with counsel, the Debtor does not reasonably believe that it would be able to obtain unsecured financing to pay the amounts owed.

8. In order to secure the Debtor's repayment of its obligations to, and pursuant to the Agreement, the Debtor granted SFC a security interest in any unearned premiums and/or any loss payments which will reduce the unearned premiums under the Policy.

# DISCUSSION

9. Section 364(c) of the Bankruptcy Code, as complimented by Bankruptcy Rule 4001(c), provides:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt -
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507 (b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

(LexisNexis 2010).

10. It is respectfully submitted that the Debtor should be authorized to continue to make payments to SFC upon the terms set forth in the Agreement and that SFC's security interest in any unearned premiums be continued post-petition. As discussed above, the Debtor requires insurance coverage in order to maintain its operations and protect the assets of the estate. The Debtor does not reasonably believe that it would be able to obtain unsecured financing to pay the premiums due under the Policy. The terms of the Agreement are reasonable and are not unduly burdensome to the Debtor and are not prejudicial to the Debtor's estate (*e.g.*, the finance charge payable by the Debtor is only $564.96). Accordingly, the Debtor believes that the relief sought by way of this Application is in the best interest of the estate and the Debtor's creditors and the same should be granted in its entirety.

## CONCLUSION

11. Based upon the foregoing, the Debtor respectfully requests that an Order be entered, substantially in the form as attached hereto as *Exhibit "B"*:

   (i) approving the Agreement between the Debtor and SFC, authorizing the Debtor to continue making payments to SFC thereunder and recognizing SFC's continuing security interest as set forth therein pursuant to §364(c) of the Bankruptcy Code and Bankruptcy Rule 4001(c);

   (ii) conditionally modifying the automatic stay provisions of §362 of the Bankruptcy Code so as to permit SFC, in the event of a payment default by the Debtor under the Agreement, and after giving at least seven (7) days notice to the Debtor, the United States Trustee and the Debtor's twenty (20) largest creditors, together with any notice required to be given under applicable non-bankruptcy law, to cancel the Policy and to apply any unearned or returned premiums due under the applicable insurance policy to any amount owing by the Debtor to SFC without further application to this Court; and

   (iii) in the event that the Policy is cancelled and the unearned premiums are insufficient to pay the amounts owed by the Debtor to SFC under the Agreement, awarding SFC an administrative expense claim under §503 of the Bankruptcy Code for any remaining amounts owing to SFC under the Agreement.

12. Pursuant to Local Bankruptcy Rule 9013-1, because there are no novel issues of law presented by this Application and the relevant points of authorities have been set forth herein, the Debtor respectfully requests that the Court waive the requirement that he file a memorandum of law in support of this Application.

Dated: New York, New York
       August 23, 2010

PICK & ZABICKI LLP
Proposed Counsel to the Debtor

By: _____
    Douglas J. Pick
    369 Lexington Avenue, 12th Floor
    New York, New York 10017
    (212) 695-6000

EXHIBIT "A"

*New Application*

**STANDARD FUNDING CORP.**
335 Crossways Park Dr.
Woodbury, NY 11797
(516) 364-0200

**PREMIUM FINANCE AGREEMENT**

ACCOUNT NO. *591988*

Please check one box:
☒ Commercial Lines ☐ Personal Lines Quote: OQ130765-1

| | | AGENT (Name and place of business) | INSURED (Name and place of business) ✓ |
|---|---|---|---|
| CASH PRICE (TOTAL PREMIUMS) | $ 13,045.78 | CHOONG LEE INS AGENCY, INC. SUITE 1010 38 W 32ND ST NEW YORK, NY 10001-0000 PHONE (212) 239-7373 | DELMONICOS C/O EASTERN FARMS INC. 55 EAST 59TH STREET NEW YORK, NY 10022-0000 ✓ |
| CASH DOWN PAYMENT | $ 4,000.00  *30%* | | SS or FID # PHONE (212) 751-5559 ✓ |

**DEFINITIONS:** STANDARD FUNDING CORP. will be herein after referred to as STANDARD. The words "the insured", "I", "you", "me", "my" mean the person borrowing the money to pay for the insurance policy(ies) listed on this PREMIUM FINANCE AGREEMENT.
**PROMISE TO PAY:** In consideration of the funds that are being advanced to pay my insurance on the policy(ies) listed below, I promise to make monthly payments as shown. I will make these payments until I have paid the full amount advanced for me, plus the finance charges and any other charges I may owe as shown on this agreement. I understand payments will be made to:
STANDARD FUNDING CORP., 335 Crossways Park Drive, Woodbury, NY 11797 and will be deemed made when actually received by STANDARD.

**TRUTH IN LENDING DISCLOSURES**

| AMOUNT FINANCED The amount of credit provided to you or on your behalf. $ 9,045.78 | FINANCE CHARGE The dollar amount the credit will cost you. $ 564.96 | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled. $ 9,610.74 | ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. 14.75 % |
|---|---|---|---|
| YOUR PAYMENT SCHEDULE WILL BE: M | Number of Payments 9 ✓ | Amount of Payments 1,067.86 | When Payments are Due (Monthly/Quarterly/Annually): Monthly BEGINNING: 7/1/2010 |

**SECURITY:** I am giving STANDARD, its successors and/or assigns a security interest in all unearned premiums which may become payable under the financed insurance policies as well as any loss payments that reduce the unearned premiums. I agree not to assign the policy(ies) except for the interest of mortgagees or loss payees, without written consent of STANDARD, its successors and/or assigns.
**DELINQUENCY CHARGES:** For installments which are in default for a period of five days or more, I agree to pay a delinquency charge of from $1.00 to a maximum of 5% of the delinquent installment ($100 maximum in Maryland). If the insurance listed in this contract is for individual, family or household purposes, the charge may not exceed $5.00 ($15.00 in Illinois). The acceptance by STANDARD of one or more late payments from me shall not prevent STANDARD or be construed as a waiver by STANDARD to exercise any or all of its rights hereunder in the event of any subsequent late payment made by me.
**PREPAYMENT:** I may prepay the full amount due on this agreement and receive a rebate of the finance charge in accordance with the rule of 78ths or such other method as authorized by law. Refunds of $1.00 or less will not be made.
**NOTE:** See both pages of this agreement for any additional information about non-payment, any required payment in full before the schedule date, and any prepayment refunds and penalties.
You have a right to receive at this time an itemization of the Amount Financed. I do ☐ do not ☒ want an itemization.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES (NAME OF INSURANCE COMPANY AND GENERAL AGENT) | COVG. TYPE | POLICY TERM | POLICY PREMIUM |
|---|---|---|---|---|---|
| 01BPS 011108 | 5/31/2010 | LIG INSURANCE COMPANY, LTD (83173) (00000) | BOP Fin Taxes / Fees: Ern Taxes / Fees: | ⑫ | 12,925.00 80.78 0.00 |
| | | NY § 2119 Insurance Law Charge (If none, so state): * | | | 40.00 |
| | | | | TOTAL: | $ 13,045.78 |

*The service for which the charge pursuant to Insurance Law §2119, is imposed are in connection with obtaining and servicing the policies listed herein.

**ACCEPTANCE:** I UNDERSTAND THAT THE BROKER OR AGENT WHOSE NAME APPEARS BELOW IS NOT A REPRESENTATIVE OF STANDARD AND HAS NO AUTHORITY TO PROMISE ANYTHING ON BEHALF OF STANDARD. I ALSO UNDERSTAND THAT STANDARD MAKES NO WARRANTIES OR REPRESENTATIONS CONCERNING THE FINANCED COVERAGE NOR HAS IT PLAYED ANY PART IN THE SELECTION, STRUCTURING OR ACQUISITION OF SUCH COVERAGE. This agreement shall not be valid until accepted by STANDARD. If my down payment is made by a check, I understand that it is accepted subject to collection and that if the check is dishonored, this agreement shall be deemed not to have been accepted, even if a notification of acceptance has been issued by STANDARD. The insured understands that STANDARD may transfer and/or assign this agreement to another duly licensed premium finance agency, bank or financial institution.
**NOTICE:** 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ BOTH PAGES OF IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT AT THE TIME YOU SIGN. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS OBTAIN A PARTIAL REFUND OF THE FINANCE/SERVICE CHARGE. 4. KEEP YOUR COPY OF THIS AGREEMENT TO PROTECT YOUR LEGAL RIGHTS.
I, THE INSURED, HAVE READ THIS AGREEMENT, UNDERSTAND IT CLEARLY AND AGREE TO THE TERMS AND CONDITIONS ON BOTH PAGES (ALL INSUREDS DESIGNATED IN THE POLICY(IES) MUST SIGN. IF THE INSURED IS A CORPORATION, AN OFFICER MUST SIGN). I ALSO ACKNOWLEDGE THE RECEIPT OF AN EXECUTED COPY OF THIS AGREEMENT AT THE TIME OF EXECUTION THEREOF AND REPRESENT I HAVE THE AUTHORITY TO SIGN ON BEHALF OF THE INSURED.
**BLANK SPACES:** I hereby allow STANDARD to fill in those spaces which refer to the name of the insurer, the policy number(s) and the due date of the first installment if the insurance policy(ies) have not been issued at the time of my signing this agreement.

| Young ae Lee | | | 5/27/10 |
|---|---|---|---|
| INSURED NAME | SIGNATURE OF THE INSURED OR AUTHORIZED REPRESENTATIVE | TITLE | DATE |

THE AGENT OR BROKER AGREES TO THE TERMS AND CONDITIONS ON BOTH PAGES OF THIS PREMIUM FINANCE AGREEMENT

| Choong K. Lee | | | 5/27/10 |
|---|---|---|---|
| AGENT OR BROKER | SIGNATURE OF AGENT OR BROKER | TITLE | DATE |

SFC 7-04 (AR, IL, MD, NE, NY) PAGE 1 OF 2

GR

## FURTHER PROVISIONS OF PREMIUM FINANCE AGREEMENT

**FINANCE CHARGE:** The finance charge shown on the first page of this agreement begins to accrue as of the earliest policy effective date shown in the Schedule of Policies. The finance charge includes a predetermined interest rate plus a non refundable service fee/charge of $10.00 or the maximum amount permitted by law.

**CANCELLATION CHARGES:** If a default by me results in cancellation of any policy listed herein, I agree to pay a cancellation charge of $10 or the maximum amount permitted by law.

**INSUFFICIENT OR UNCOLLECTED CHARGES:** A $20 charge, or the maximum charge permitted by law, shall be made for each returned check.

**REPRESENTATION OF SOLVENCY:** I represent that I am not insolvent or presently the subject of a bankruptcy and/or insolvency proceeding of any kind.

**NOT A CONDITION OF OBTAINING INSURANCE:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance.

**LIMITATION OF LIABILITY:** I agree that STANDARD'S liability to me, any person or corporation for breach of any of the terms of this agreement, or the wrongful exercise of the right or authority of cancellation, shall be limited to the amount of principal balance outstanding except in the event of willful misconduct or as otherwise limited by law.

**COLLECTION COSTS:** If this agreement is placed for collection with an attorney who is not an employee of STANDARD, I agree to pay reasonable attorney fees and costs, including those in the course of appeal as well as other costs and expenses, equal to 20% of the unpaid balance or up to the extent and if permitted by law or as awarded by the court.

**GOVERNING LAW:** This document is the entire agreement between STANDARD and me and can only be changed in writing and signed by both parties. The laws of the state indicated in the insured's address as set forth on Page 1 shall govern this agreement unless otherwise stated. If any provision of this agreement is proved to be in violation of any applicable statute and/or regulation, such violation shall not prevent the enforcement of any other provisions of this agreement pursuant to governing law.

**ENDORSEMENTS:** I agree that STANDARD may endorse my name on any check or draft for all monies that may become due from the insuring company, and apply the same as payment to this agreement.

**LATE PAYMENTS, DEFAULTS:** If I do not pay as agreed, I appoint STANDARD, its successors and/or assigns as my ATTORNEY-IN-FACT who may legally cancel the insurance policy(ies) shown on the agreement, and receive any unearned premiums from the insurance company(ies) which shall be applied to my loan balance. I also understand that:

( a ) No payment received after STANDARD has mailed me a Notice of Cancellation will cause my insurance to be reinstated, and such payment will only be applied to reduce the loan balance I owe.

( b ) If I do not pay as agreed, the entire loan balance due under this agreement is immediately payable by me regardless of any unearned premiums due STANDARD. This means STANDARD may, at its option, enforce payment of this debt without proceeding against the security interest given STANDARD.

( c ) Monies due me from STANDARD on any other account(s) may be applied to satisfy or reduce the balance due on this account. Past due amounts I owe STANDARD on any other account(s), including, but not limited to, account balances, late charges or other miscellaneous charges, may be added to this account and remaining installments will be adjusted to reflect the addition(s).

(d) To the extent permitted by law, if cancellation occurs, I will be responsible to pay interest on the balance due at the contract rate of interest or maximum rate permitted by law until that balance is paid in full, or until such date as is required by applicable law.

**WARRANTY OF ACCURACY:** I warrant to STANDARD, its successors and/or assigns that the insurance policy(ies) listed in the schedule on Page 1 have been issued to me and are in full force and effect and that I have not assigned any interest in the policy(ies) except for the interest of mortgagees and loss payees. I further warrant that said policy(ies) are not currently nor have they ever been the subject of any other premium finance agreement and/or arrangement.

**ADDITIONAL PREMIUMS:** The money paid by STANDARD is only for the premium as determined at the time this agreement is accepted by STANDARD. STANDARD's payment shall not be applied by the insurance company to pay for any additional premiums owed by me as a result of any type of misclassification of the risk. I agree to pay the insurance company any additional premiums which become due for any reason including, but not limited to an audit. STANDARD may however, at its option, finance the additional premium according to a written agreement of amendment. STANDARD may assign to the insurance company any rights it has against me for premiums due the insurance company in excess of the premium returned to you.

**SPECIAL INSURANCE POLICIES:** If the insurance policy issued to me is auditable or is a reporting form policy or subject to retrospective rating, then I promise to pay the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by STANDARD.

**NAMED INSURED:** If the financed insurance policy(ies) provide that the first named insured shall be responsible for payment of premiums and shall act on behalf of all other insureds with respect to any actions relating to the policy(ies), then the same shall apply to this agreement. If such is not the case, then all insured's names must be shown on this agreement unless a separate agreement specifies one insured to act in all matters for the others.

---

**CERTIFICATION AND WARRANTY OF AGENT/BROKER:** The broker/agent indicated on the reverse side is the producer of the transaction and represents, certifies and warrants to STANDARD that the signature(s) indicated are those of the insured(s) maker(s) and are genuine. The agent/broker further warrants: the truth of the facts shown on this contract; that the insured has received a copy of this contract; that any down payment has been paid (in good funds) or accompanies this contract; and that STANDARD'S security interest in the financed policy(ies) is absolute and unencumbered by the claims of any other party. Upon cancellation of any policy(ies) financed, the broker/agent will remit to STANDARD any unearned premium(s) including unearned commissions, returned by the Insurance Company(ies), without regard as to whether these monies were returned on a gross or net basis.

Broker/Agent further agrees that no Audit or Reporting Form Policies, policies subject to Retrospective Rating or to minimum earned premiums are included in this Agreement except as indicated and that the Deposit or Provisional Premiums for the indicated policies are not less than the anticipated premiums to be earned for the full terms of the policies. If the policy is subject to Minimum Earned Premiums, the minimum earned premiums are $_____.

None of the policies contain provisions which prohibit cancellation by the insured or STANDARD within 10 days except as indicated, nor except as indicated is the unearned premium on the scheduled policies to be computed by other than the standard short rate or pro rata table.

None of the policies indicated above are direct bill policies or written for a term of less than one year except:_____.

The broker/agent also represents that no proceeding in bankruptcy, receivership or insolvency has been instituted by or against the named insured or if the named insured is the subject of such a proceeding, it is noted on the premium finance agreement in the space in which the insured's name and address is placed.

Broker/Agent agrees that if any of the warranties contained in this agreement are found to be untrue, it will immediately remit to STANDARD the full amount then remaining unpaid on this premium finance agreement.

---

**BROKER'S RECOURSE**

The undersigned, jointly and severally, hereby unconditionally guaranty and warrant the full and complete payment of this Premium Finance Agreement in accordance with the terms and conditions thereof and any and all renewals, continuations, modifications, extensions, compromises, supplements and amendments thereof, without deduction by reason of set-off, defense, or counterclaim. The liability of each of the undersigned is direct and unconditional and may be enforced without requiring STANDARD to first resort to any other right, remedy or security whether or not such constitutes an election of remedies, against the insured. Nothing shall discharge or satisfy our liability hereunder except the full performance and payment of the unpaid balance within 10 days from the date STANDARD demands payment of the Premium Finance Agreement which has been read and is hereby ratified and confirmed.

GUARANTORS SIGN HERE:

_____ (L.S.)   _____ (L.S.)
(GUARANTOR)                           (GUARANTOR)

SFC 7-04 (AR, IL, MD, NE, NY)                PAGE 2 OF 2                INSURED'S INITIALS _____

Standard Funding Corp.
335 Crossways Park Drive
Woodbury, NY 11797

* Statement of Account *

Acct Number: 591988      1st  Due Date:     7/01/10
Prepared:   8/20/10      Last Due Date:     3/01/11
                         Cash Price...:    13,448.29
                         Down Payment.:     4,000.01
                         Amt Financed.:     9,448.28
                         Finance Chg..:       595.41
                         Total Paymnts:    10,043.69

DELMONICOS
C/O EASTERN FARMS INC.
55 EAST 59TH STREET
NEW YORK NY 10022

| Transaction Date | Transaction Description | Transaction Amount | Balance After Transaction |
|---|---|---|---|
| 5/27/10 | Total To Be Repaid (Includes any additional premiums processed) | | 10,043.69 |
| 6/28/10 | Payment Received                   CI | 1,067.86CR | 8,975.83 |
| 7/23/10 | Payment Received                   CI | 1,067.86CR | 7,907.97 |
| 8/19/10 | Payment Received                   CI | 1,067.86CR | 6,840.11 |
| 8/20/10 | Current Balance | | 6,840.11 |

EXHIBIT "B"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                    Chapter 11
EASTERN FARMS, INC.,                                      Case No. 10-14150(AJG)
d/b/a DELMONICO GOURMET FOOD
MARKET,

                            Debtor.
------------------------------------------------------------x

### ORDER AUTHORIZING THE DEBTOR TO AUTHORIZING THE DEBTOR TO CONTINUE PAYMENTS UNDER INSURANCE PREMIUM FINANCING AGREEMENT

Upon the application dated August 23, 2010 (the "Application") of Eastern Farms Inc. d/b/a Delmonico Gourmet Food Market, the debtor and debtor-in-possession herein (the "Debtor"), seeking the entry of an Order, pursuant to §364(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to continue payments to Standard Funding Corp. ("SFC") under a certain Premium Finance Agreement (the "Agreement") attached to the Application as *Exhibit "A"*; and due and adequate notice of the Application and the hearing thereon having been given in accordance with Bankruptcy Rule 4001(c) which notice the Court finds was good and sufficient; and upon the record of the hearing on September 15, 2010 to consider the Application; and due consideration having been given to any responses thereto; and sufficient cause having been shown therefor, it is

**ORDERED**, that the Application is granted and the Debtor is hereby authorized to continue to obtain insurance premium financing from, and make payments to, SFC upon substantially the same terms as set forth in the Agreement, provided however that the provisions of this Order shall supercede the terms of the Agreement in the event of any conflict between them; and it is further

**ORDERED**, that notwithstanding any provision of the Agreement to the contrary, the material terms of the Agreement may only be changed, modified and/or amended with the approval of this Court and upon the entry of an appropriate Order; and it is further

**ORDERED**, that SFC's security interest in any unearned premiums and/or any loss payments which will reduce the unearned premiums under the applicable insurance policy is hereby continued. Said security interest shall be limited to the foregoing and shall not extend to any other assets of the Debtor whether now in existence or acquired hereafter; and it is further

**ORDERED**, that the automatic stay provisions of §362 of the Bankruptcy Code are hereby conditionally modified so as to permit SFC, in the event of a payment default by the Debtor under the Agreement, and after giving at least seven (7) days notice to the Debtor, the United States Trustee and the Debtor's twenty (20) largest creditors, together with any notice required to be given under applicable non-bankruptcy law, to cancel the Policy and to apply any unearned or returned premiums due under the applicable insurance policy to any amount owing by the Debtor to SFC without further application to this Court; and it is further

**ORDERED**, that in the event that the applicable insurance policy is cancelled and the unearned and/or loss payments are insufficient to pay the amounts owed by the Debtor to SFC under the Agreement, any remaining amounts owing to SFC under the Agreement shall be allowed and given priority as an administrative expense claim under §503 of the Bankruptcy Code, but subject to SFC' filing of a corresponding proof of claim in the Debtor's case on account of the amounts claimed to be owed, and it is further

**ORDERED**, that the reversal or modification on appeal of the authority granted the Debtor by this Order and/or §364 of the Bankruptcy Code shall not effect the validity of the debt, priority or lien granted to SFC pursuant to this Order, as provided by §364(e) of the Bankruptcy Code, and it is further

**ORDERED**, that this Order shall be binding upon the Debtor, its estate and all successors and assigns of the Debtor and its estate including, but not limited to, any trustee appointed in the Debtor's bankruptcy case under Chapter 7 or Chapter 11 of the Bankruptcy Code. Except as otherwise provided for herein, SFC' rights under the Agreement and applicable non-bankruptcy law shall not be impaired by this bankruptcy proceeding, the appointment of a trustee, the conversion of this proceeding to one under Chapter 7 of the Bankruptcy Code or any other provision(s) of the Bankruptcy Code.

Dated: New York, New York
      September __, 2010

 

_____
HON. ARTHUR J. GONZALEZ
UNITED STATES BANKRUPTCY JUDGE